# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

|  | § |  |
|---|---|---|
| **RETROLED COMPONENTS, LLC,** | § |  |
|  | § |  |
| *Plaintiff / Counterclaim-Defendant,* | § |  |
|  | § | **Civil Case No.: 6:18-cv-55-ADA** |
| **v.** | § |  |
|  | § |  |
| **PRINCIPAL LIGHTING GROUP, LLC,** | § |  |
|  | § |  |
| *Defendant / Counterclaim-Plaintiff.* |  |  |


**PRINCIPAL LIGHTING GROUP'S OPENING CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ....................................................................................................... 1

II.    THE '835 PATENT ..................................................................................................... 2

III.   APPLICABLE LAW ................................................................................................... 5

IV.    ARGUMENT ............................................................................................................... 7

   A.   "Frictionally Engage [/Engaging]" (claims 1, 13, and 19) ............................ 7

   B.   "Elongate Support Member" (claims 1, 13, and 19) ...................................... 9

   C.   "Mechanical Coupling Element" (claims 1 and 19) ...................................... 13

   D.   "End Cap" (claims 1, 13, and 19) ................................................................ 16

   E.   "Non-Electrically Engage" (claim 19) ......................................................... 18

   F.   "Mount"/"Coupling" (claims 1, 8, 13, 14, 16, and 18-20).......................... 19

   G.   "Low Voltage" (claims 16, 17, and 19) ...................................................... 22

   H.   "Resinous Plastic Extrusion" (claim 12) ..................................................... 24

V.     CONCLUSION.......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Electrolyte Techs. LLC v. Samsung SDI Co., Ltd*,
No. A:17-CV-0030-LY, 2018 WL 2770648 (W.D. Tex. June 8, 2018)...................................6

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010).............................................................................................19

*Bos. Sci. Corp. v. Cook Grp. Inc.*,
No. CV 15-980-LPS-CJB, 2017 WL 1364205 (D. Del. Apr. 12, 2017)................................12

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004)..................................................................................................7

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*,
224 F.3d 1308 (Fed. Cir. 2000)..............................................................................................19

*Control Res., Inc. v. Delta Elecs., Inc.*,
133 F. Supp. 2d 121 (D. Mass. 2001) ......................................................................................5

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
469 F.3d 1005 (Fed. Cir. 2006)..............................................................................................11

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*,
766 F.3d 1338 (Fed. Cir. 2014)................................................................................................4

*Hill-Rom Services, Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014)..............................................................................................12

*HTC Corp. v. Cellular Commc'ns Equip., LLC*,
701 F. App'x 978 (Fed. Cir. 2017) .........................................................................................19

*Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*,
790 F.3d 1298 (Fed. Cir. 2015)..............................................................................15, 19, 24

*Liebel–Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)..................................................................................................6

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ......................................................5

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
800 F.3d 1366 (Fed. Cir. 2015)..............................................................................................10

*Meetrix IP, LLC v. Citrix Sys., Inc.*,
  No. 1:16-CV-1033-LY, 2017 WL 5986191 (W.D. Tex. Dec. 1, 2017) ........................5, 6, 13

*Merck & Co. v. Teva Pharm. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005)..................................................................................17

*Microlinc, LLC v. Intel Corp.*,
  No. 2:07-CV-488, 2013 WL 2471551 (E.D. Tex. June 7, 2013)............................................22

*MIT v. Shire Pharm., Inc.*,
  839 F.3d 1111 (Fed. Cir. 2016)..................................................................................22

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)......................................................................6, 9, 12, 14

*Pilot Energy Sols., L.L.C. v. OXY USA Inc.*,
  No. A-16-CA-00687-SS, 2017 WL 3726432 (W.D. Tex. Aug. 25, 2017)..............................7

*Pisony v. Commando Constr., Inc.*,
  No. W-17-CV-00055-ADA, 2019 WL 928406 (W.D. Tex. Jan. 23, 2019) ..........13, 16, 21, 23

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004)..................................................................................17

*Thorner v. Sony Computer Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012).........................................................................5, 16, 22

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997)..................................................................................16

*V-Formation, Inc. v. Benetton Grp. SpA*,
  401 F.3d 1307 (Fed. Cir. 2005)....................................................................................6

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)......................................................................................5

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) (en banc)................................................................10, 11

*Zeroclick, LLC v. Apple Inc.*,
  891 F.3d 1003 (Fed. Cir. 2018)....................................................................................9

## Statutes

35 U.S.C. § 112(f)..............................................................................................................9

35 U.S.C. § 112, ¶ 6..............................................................................................9, 11, 13, 14

iii

## EXHIBIT LIST

Exhibit 1        Chart showing side-by-side comparison of original language
                 of claim 1 with terms identified by RetroLED in bold
                 compared with claim 1 language with RetroLED's proposed
                 constructions applied in bold bracketing

Exhibit 2        Screenshot from RetroLED's website located at
                 http://retroledcomponents.com/

Exhibit 3        Excerpt from IEEE Standard Dictionary of Electrical and
                 Electronics Terms (1977)

Exhibit 4        Screenshot showing International Electrotechnical
                 Commission (IEC) definition of "low voltage" located at
                 https://www.scribd.com/presentation/387761434/High-
                 Voltage-Technology-1

iv

Pursuant to the Court's Order Governing Proceedings – Patent Case (Dkt. No. 34), Principal Lighting Group, LLC ("PLG") hereby submits its Opening Claim Construction Brief and respectfully shows the Court why its proposed claim constructions should be adopted over those of RetroLED Components, LLC ("RetroLED"), as follows:

## I.    INTRODUCTION

PLG presently asserts 10 claims from the sole asserted U.S. Patent No. 9,311,835 ("the '835 Patent"). From those 10 asserted claims, RetroLED posits that nine claim terms require specific constructions,[1,2] while PLG maintains that those terms should be afforded their plain and ordinary meaning. The '835 Patent is an easily understandable, mechanical patent – but RetroLED's proposed constructions strain the claims in apparent attempt to inject non-infringement and other defenses to PLG's allegations of infringement. RetroLED's design is evident in that several of its verbose proposed constructions for otherwise self-defining claim terms reuse or reshuffle the same claim language in conjunction with improperly importing limitations from the specification or elsewhere in the claims. Indeed, ***RetroLED's proposed constructions would more than triple the length of claim 1*** by transforming the claim from approximately 250 words to over 800 words.[3] Further, as shown below, not only are RetroLED's proposed constructions unnecessary to understanding the claims, its constructions are contrary to legal presumptions, technical teachings, and the understanding a person of ordinary skill in the art would have of the '835 Patent.

---

[1] RetroLED initially identified 25 terms as needing construction.

[2] Eight of the nine claim terms RetroLED seeks to construe come from one or more of three claims (claims 1, 13, and 19).

[3] To demonstrate the unreasonable result of RetroLED's proposed constructions, PLG has prepared Exhibit 1 hereto which reproduces the original language of claim 1 side-by-side the language of claim 1 with RetroLED's proposed constructions applied.

## II.      THE '835 PATENT

For many years, the commercial sign industry was dominated by the sale and installation of incandescent gas-discharge lighting solutions (*e.g.*, fluorescent or neon lighting) which were expensive, inefficient, and cumbersome to replace regularly given their short service life. In order to overcome these shortfalls, the sign industry began to replace these gas-discharge lamps with more modern, longer lasting LED assemblies.

However, at the advent of this transition, only the most primitive "retrofit" solutions had been developed to replace fluorescent and neon lamps. This generally involved the labor and cost intensive process of replacing entire internally-lighted or back-lit signs or outfitting these signs with entirely new internal components to allow LED components to fit and operate.

To overcome these obstacles, the inventor of the '835 Patent created a lighting solution which provided far more flexibility and less expense during the retrofitting process. As the '835 Patent describes, "[l]amp support assembly **10** allows for sign **12**, which may have been originally designed and manufactured for internal lighting by one or more gas-discharge lamps such as fluorescent or neon tube lamps **21** or the like, to be retrofitted with alternative lighting, such as low-voltage lighting, largely or substantially without modifications to the original sign." *See* '835 Patent at col. 3, ll. 51-56. An exemplary embodiment of sign **12** – with tube lamp **21** removed and replaced with lamp support assembly **10** – is depicted below:

2



As shown, "[l]amp support assembly **10** includes an elongate support member **14** for supporting one or more electric lamp units **28** which, in the illustrated embodiment, each include four light emitting diode (LED) lamps **32.**" *Id.* at col. 3, ll. 56-60. "Elongate support member **14** has opposite end portions **14a, 14b** [] fitted with an end cap **16**." *Id.* at col. 3, ll. 61-64. "Each end cap **16** has an inwardly-facing side **16a** [] configured to engage one of the opposite end portions **14a, 14b** of the elongate support member **14**, [as well as] outwardly-facing sides **16b** includ[ing] a mechanical coupling element **18** for engaging [] mounts or sockets **20a, 20b.**" *Id.* at col. 3, l. 64 to col. 4, l. 4. One embodiment of this arrangement is depicted in Figure 4 reproduced below:

3



FIG. 4

By utilizing this patented end cap arrangement, installers are easily able to retrofit various types of signs using a flexible array of lighting products with minimal constraints due to the size of the sign or types of existing mounts installed therein. For example, RetroLED offers a number of modular lighting components which allows users to "build your own LED light sticks" for "[i]ncandescent to LED conversion" by "[r]etrofit into existing [s]ockets." *See* Exhibit 2 hereto (http://retroledcomponents.com/) (last visited June 19, 2019). Indeed, RetroLED has prepared and advertises a video demonstrating the process of creating these infringing products. *See* (https://vimeo.com/210437833) (last visited June 19, 2019). This flexibility was precisely the purpose of the '835 Patent and the reason RetroLED's products seemingly remain commercially viable in the marketplace.

4

### III.    APPLICABLE LAW

"Claim construction is a legal statement of the scope of the patent right." *Epos Techs.*

*Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1341 (Fed. Cir. 2014) (citing *Lighting Ballast*

*Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1276–77, 1284 (Fed. Cir. 2014)).

Claim construction is a question of law that must be resolved by the Court. *Markman v.*

*Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)). Its

purpose is to translate the claim language "into plain English so that a jury will understand."

*Control Res., Inc. v. Delta Elecs., Inc.*, 133 F. Supp. 2d 121, 127 (D. Mass. 2001).

Claim terms "are generally given their ordinary and customary meaning." *Meetrix IP,*

*LLC v. Citrix Sys., Inc.*, No. 1:16-CV-1033-LY, 2017 WL 5986191, at *1 (W.D. Tex. Dec. 1,

2017) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)). "[T]he ordinary and

customary meaning of a claim term is the meaning that the term would have to a person of

ordinary skill in the art in question at the time of the invention." *Id.* (citing *Phillips*, 415 F.3d at

1313). "The person of ordinary skill in the art is deemed to have read the claim term in the

context of the entire patent." *Id.* "The Federal Circuit has reaffirmed that a departure from the

ordinary and customary meaning is the exception, not the rule." *Id.* at *2 (citing *Thorner v. Sony*

*Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). "There are only two

exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own

lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the

specification or during prosecution." *Thorner*, 669 F.3d at 1365 (citing *Vitronics Corp. v.*

*Conceptronic, Inc.,* 90 F.3d 1576, 1580 (Fed. Cir. 1996)).

"It is well-settled that, in interpreting an asserted claim, the court should look first to the

intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in

5

evidence, the prosecution history." *Vitronics*, 90 F.3d at 1582 (citing *Markman*, 52 F.3d at 979). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id.* The intrinsic record also includes "prior art cited in a patent or cited in the prosecution history of the patent." *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005) (citing *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1371–72 n. 4 (Fed. Cir. 2002); *Vitronics*, 90 F.3d at 1582; *Markman*, 52 F.3d at 979-80).

Claim construction always begins with the language of the claims themselves. *V-Formation*, 401 F.3d at 1311. "Claim language guides the court's construction of claim terms. 'The context in which a term is used in the asserted claim can be highly instructive.' Other claims, asserted and unasserted, can provide additional instruction because 'terms are normally used consistently throughout the patent.' Differences among claims, such as additional limitations in dependent claims, can provide further guidance." *Advanced Electrolyte Techs. LLC v. Samsung SDI Co., Ltd*, No. A:17-CV-0030-LY, 2018 WL 2770648, at *2 (W.D. Tex. June 8, 2018) (citing *Phillips*, 415 F.3d at 1312). Further, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1314–15 (citing *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)). "[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest." *Liebel-Flarsheim*, 358 F.3d at 910. It is also a well-known tenet of claim construction law that "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Meetrix IP*, 2017

6

WL 5986191, at *9 (citing *Epos Techs.*, 766 F.3d at 1341).

"Aside from the intrinsic evidence, the Court may also consult 'extrinsic evidence,' which is 'all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Pilot Energy Sols., L.L.C. v. OXY USA Inc.*, No. A-16-CA-00687-SS, 2017 WL 3726432, at *3 (W.D. Tex. Aug. 25, 2017) (citing *Phillips*, 415 F.3d at 1317). The Federal Circuit has stated that extrinsic evidence "can shed useful light on the relevant art, but is less significant than the intrinsic record in determining the legally operative meaning of disputed claim language." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (internal quotations omitted) (citing *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004)).

## IV.   ARGUMENT

### A.   "Frictionally Engage [/Engaging]" (claims 1, 13, and 19)

| PLG's Construction | RetroLED's Construction |
|---|---|
| No construction necessary | To engage by friction between the inwardly-facing side of an end cap and an end portion of the elongate support member/engaging by friction between the inwardly-facing side of an end cap and an end portion of the elongate support member. |

The term "frictionally engage [/engaging]" is readily understandable to one of ordinary skill in the art and needs no construction. Tellingly, the self-defining nature of this term is manifested in the first four words of RetroLED's proposal which seeks to define "frictionally engage" as "to engage by friction . . . ." RetroLED's proposed construction creates, as opposed to alleviates, supposed "confusion" by first rearranging the relevant phrase (in the first four words) and then adding to the construction language already present in the asserted claims.

7

For example, claim 1 of the '835 Patent recites, in relevant part, a "light support assembly" comprising (highlighting added):

> one and only one end cap at each of said opposite end portions of said elongate support member, each of said end caps having an inwardly-facing side and an outwardly-facing side, said inwardly-facing sides configured to frictionally engage and be supported at a respective one of said opposite end portions of said elongate support member;

RetroLED's proposed construction unnecessarily shuffles and repeats the existing claim langauge into the construction of "frictionally engage." This would improperly render the remainder of the highlighted claim language superfluous. *Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 837 (W.D. Tex. 2016) ("[I]nterpretations that render some portion of the claim language superfluous are disfavored.") (quoting *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004)).

The following table further demonstrates the confusing and superfluous import RetroLED's proposed construction would have on claim 1:

| Claim 1 As Written | With RetroLED's Proposed Construction |
|---|---|
| one and only one end cap at each of said opposite end portions of said elongate support member, each of said end caps having an inwardly-facing side and an outwardly-facing side, said **inwardly-facing sides configured to** frictionally engage and be supported at **a respective one of said opposite end portions of said elongate support member**; | one and only one end cap at each of said opposite end portions of said elongate support member, each of said end caps having an inwardly-facing side and an outwardly-facing side, said **inwardly-facing sides configured to** [**to engage by friction between the inwardly-facing side of an end cap and an end portion of the elongate support** |

| | |
|---|---|
| | **member**] and be supported at **a respective one of said opposite end portions of said elongate support member**; |

There is simply no purpose served or "confusion" corrected by RetroLED's proposed construction. Rather, RetroLED's seeks to unnecessarily complicate and confuse claim 1. For at least these reasons, RetroLED's proposal should be rejected, and "frictionally engaged[/engaging]" should be given its plain and ordinary meaning.

**B.**     **"Elongate Support Member"** (claims 1, 13, and 19)

| **PLG's Construction** | **RetroLED's Construction** |
|---|---|
| No construction necessary | Subject to pre-AIA 35 U.S.C. § 112, ¶ 6. |
| | Function: to support a plurality of electrical lamps |
| | Structure: an I-beam structure |
| | Support: Figs. 4-6; Figs. 8-9; Figs. 21A & 21B; a portion of Fig. 24; col. 3, ll. 60-63; and col. 4, 35-60. |

A claim limitation that does not use the term "means" or "step" triggers the rebuttable presumption that pre-AIA 35 U.S.C. § 112, ¶ 6 ***does not apply***.[4] *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1310 (Fed. Cir. 2005) (en banc). This presumption is only overcome if a challenger demonstrates, by a preponderance of the evidence, that "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for

---

[4] The '835 Patent claims priority to U.S. Provisional Patent Application No. 61/417,156 filed on November 24, 2010, and therefore pre-AIA 35 U.S.C. § 112, ¶ 6 applies. However, PLG notes that courts have treated pre-AIA 35 U.S.C. § 112, ¶  6 and AIA 35 U.S.C. § 112(f) similarly for purposes relevant to claim construction and thus post-AIA jurisprudence is relevant to pre-AIA 35 U.S.C. § 112, ¶ 6.

performing that function." *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007 (Fed. Cir. 2018)

(quoting *Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1348 (Fed. Cir. 2015) (en banc)).

"The standard is whether the words of the claim are understood by persons of ordinary skill in

the art to have a sufficiently definite meaning as the name for structure." *Williamson,* 792 F.3d at

1349.

RetroLED cannot credibly claim that the term "elongate support member" fails to recite

"sufficiently definite structure" so as to overcome the presumption against § 112, ¶ 6 that exists

here where the term "means" is not recited. Indeed, the claim language itself – bolstered by the

specification – makes clear that the "elongate support member" has a definite structure that

extends the length of the internally-lit sign and replaces gas-discharge lamps by supporting

various electrical lamp units (*e.g.*, LEDs). *See* '835 Patent, col. 3, ll. 60-63; col. 4:35-60; Fig. 4;

*see also Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir.

2015) (noting that to determine whether § 112, ¶ 6 applies, "we ask if the claim language, read in

light of the specification, recites sufficiently definite structure to avoid § 112, sixth paragraph.")

(quoting *Robert Bosch, LLC v. Snap–On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014)). Each and

every limitation of claim 1 recites structural features which are either attached to the elongate

support member or which interact with the same. A person of ordinary skill in the art would have

no issue recognizing the definite nature of "elongate support member **14**" which is described in

detail and illustrated in the specification including (highlighting added):



FIG. 6

Setting aside the fact that "elongate support member" clearly connotes a sufficient structure in both the claims and specification, RetroLED is incapable of identifying any "non-structural generic placeholder" which would overcome the presumption against applying § 112, ¶ 6. *See Williamson*, 792 F.3d at 1350 ("Generic terms [] and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6.") (citations omitted). The Federal Circuit has rejected attempts to invoke § 112, ¶ 6 for terms reciting "member," particularly when the context of the claim and specification provide detailed structure. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1023 (Fed. Cir. 2006) ("Here, the 'compression member' limitation does not use the term 'means,' and the presumption against means-plus-function treatment is not overcome. The claims and the specification unmistakably establish that 'compression member'

refers to particular structure."); *Bos. Sci. Corp. v. Cook Grp. Inc.*, No. CV 15-980-LPS-CJB, 2017 WL 1364205, at *4 (D. Del. Apr. 12, 2017) ("Thus, the claims, specification, and figures not only articulate where the 'tension member' is located and how it interacts with other parts of the apparatus, but they do so in a way that provides insight into how the 'tension member' itself must be structured.").

Notably, RetroLED recognizes at least one structural embodiment in its proposed "structure." However, a closer examination of RetroLED's proposal reveals RetroLED's true intent – to limit this term to just one embodiment (*i.e.*, "an I-beam structure") and exclude other infringing embodiments. More specifically, while RetroLED's proposed "structure" would narrow the "elongate support member" to just one structural embodiment, the proposed "function" adds nothing beyond merely repeating part of the existing claim language. *See, e.g.*, '835 Patent, claims 1 and 19 ("an elongate support member for *supporting a plurality of electric lamp units*") (emphasis added). This ambitious attempt to narrow the scope of the asserted claims should be rejected as contrary to multiple bedrock principles of claim construction.

RetroLED commits "one of the cardinal sins of patent law," which is the mistake of directly "reading a limitation from the written description into the claims." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (internal quotations omitted)). There is simply no evidence whatsoever that the patentee intended to limit the "elongate support member" to merely "an I-beam structure" embodiment. *Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'"). In fact, dependent claims 2 and 11 clarify that only in certain embodiments does

12

the "elongate support member comprise[] an I-beam cross section." Thus, not only is RetroLED's proposal of having only "an I-beam structure" contrary to evidence, it violates the principle of claim differentiation which this Court recently espoused. *See Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 WL 928406, at *3 (W.D. Tex. Jan. 23, 2019) ("The Court understands that it is well established that the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim. [W]here the limitation that is sought to be read into an independent claim already appears in a dependent claim; the doctrine of claim differentiation is at its strongest.") (citations and quotations omitted).

RetroLED's proposal is fundamentally and fatally flawed for the numerous reasons discussed above. In any event, RetroLED does not and cannot show that the term "elongate support member" would not be understood by either a person of ordinary skill in the art (or even a lay juror). Given that this term is readily understandable, not confusing, and does not invoke application of § 112, ¶ 6, the Court should find that no construction is required. *Id.* at *5 ("The Court finds that this claim term should be given its Plain and Ordinary meaning. The Court finds that there is nothing about the claim term that is confusing; therefore, the term requires no construction."); *Meetrix IP, LLC v. Citrix Sys., Inc.*, No. 1:16-CV-1033-LY, 2017 WL 5986191, at *2 (W.D. Tex. Dec. 1, 2017) ("The Federal Circuit has reaffirmed that a departure from the ordinary and customary meaning is the exception, not the rule.") (citation omitted).

### C.   "Mechanical Coupling Element" (claims 1 and 19)

| PLG's Construction | RetroLED's Construction |
|---|---|
| No construction necessary | Subject to pre-AIA 35 U.S.C. § 112, ¶ 6. Function: to mechanically engage or be received in a single electromechanical mount |

| | for a gas-discharge lamp |
| --- | --- |
| | Structure: a base plate or flange and a male prong or projection extending outwardly from base plate, which in turn has a pair of opposite side walls spaced from each other and joined at their ends by rounded end walls to define an interior cavity, which includes a pair of recessed shoulders inside the cavity that project outwardly from base plate but not as far as do side walls and which form the outward extent of rounded end walls so that a gap is formed between end portions of the opposite side walls |
| | Support: Fig. 20; col. 3, l. 66 – col. 4, l. 6; col. 2, ll. 29-32; col. 5, ll. 19-31; col. 5, ll. 32-55 |

Like discussed above with respect to the term "elongate support member," RetroLED's proposal for "mechanical coupling element" runs afoul of numerous claim construction principles and long-standing legal presumptions. In particular, the same presumption against § 112, ¶ 6 applies here. *Phillips,* 415 F.3d at 1310. Further, RetroLED's proposed "structure" (i) contradicts its other proposed claim construction in this case;[5] (ii) reveals that there is unquestionably sufficient structure recited in the claims and specification such that RetroLED cannot possibly overcome the presumption against § 112, ¶ 6; and (iii) once again improperly injects embodiments from the specification into the claims under the cover of § 112, ¶ 6.

Aside from these problems with its proposal, RetroLED's proposed "structure" is incomplete as it omits embodiments described in the specification. *See* '835 Patent, col. 5, ll. 19-

---

[5] As discussed below, RetroLED proposes a specific structural definition for the term "coupling." RetroLED cannot reconcile the incompatible positions that there is sufficient structural support for "coupling" on one hand so as not to invoke § 112, ¶ 6, but no structural support for "mechanical coupling element" on the other hand. Further, RetroLED's positions raises the conundrum of applying a claim construction for one term within a phrase that has a separate construction (under § 112, ¶ 6 no less).

25 ("Mechanical coupling element **18**, which is disposed along outwardly-facing side **16b** of end cap **16** [], substantially replicates the structure of the conventional electro-mechanical end coupler **21** a of a 'high output' fluorescent tube lamp **21**, and is shaped to engage or be received in the conventional or standard electro-mechanical sockets or mounts **20a**, **20b**."); *id.* at col. 5, ll. 44-55 ("[M]echanical coupling elements **18** lack electrical conductors since they need not be used to conduct electricity to electric lamp units **28**. In all other respects, mechanical coupling elements **18** may be structurally very similar or even identical to the conventional electro-mechanical end couplers **21** a of high output fluorescent tube lamps **21**, which are configured to mechanically and electrically engage the standard electro-mechanical sockets or mounts **20a**, **20b** of sign **12** (FIG. 1). Mechanical coupling elements **18** may be made from injection-molded non-metal material, for example, such as a resinous plastic material or the like."). RetroLED cannot cherry pick certain structure over others described in the specification in hope to narrow the scope of "mechanical coupling element" (to the extent § 112, ¶ 6 would apply to begin with, which it should not for the reasons discussed above).

Similarly, RetroLED's proposed "function" is flawed. Aside from adding the unnecessary phrase "*mechanically* engage" to the "function," RetroLED's proposal would omit at least the different types of "mounts" recited in claims 19 and 20. In particular, RetroLED proposes that the "mechanical coupling element" solely engages with "a single electromechanical mount," but claim 19 makes clear that it actually engages with "individual standard mounts" and claim 20 recites engaging with "purely mechanical mounts." Thus, RetroLED's proposal is not only unreasonably narrow, it also actually excludes embodiments explicitly recited in dependent claims. *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015)

("A claim construction that excludes a [disclosed] embodiment is rarely, if ever, correct.") (quotation omitted).

**D.    "End Cap"** (claims 1, 13, and 19)

| PLG's Construction | RetroLED's Construction |
|---|---|
| No construction necessary | A fitting that encases an end of the elongate support member |

There is nothing in the intrinsic record that supports RetroLED's proposed construction or which would otherwise trigger an "exception" to the general rule that the term be given its plain and ordinary meaning. *Thorner*, 669 F.3d at 1365. RetroLED's overt attempts to inject non-infringement arguments should be rejected. *See Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 WL 928406, at *5-*6 (W.D. Tex. Jan. 23, 2019) (rejecting verbose proposal, applying patentee's proposal to use plain and ordinary meaning, and finding that "[s]uch additional verbiage is unnecessary, in the Court's opinion, for any reason other than to create a non-infringement argument."); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, not an obligatory exercise in redundancy.").

Assuming *arguendo* that construction is required for this readily understandable term, RetroLED's proposed construction misses the mark. Not only does its proposal inject ambiguous terms used nowhere in the intrinsic record (*e.g.*, "a fitting" and "encases"[6]), the construction also improperly excludes numerous embodiments. *Kaneka*, 790 F.3d at 1304 (rejecting proposed

---

[6] Merriam-Webster's dictionary defines the word "encase" to mean "to enclose in or as if in a case." *Encase Definition,* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/encase (last visited June 11, 2019). However, the specification is not so limited for the reasons set forth above.

construction excluding disclosed embodiments). In particular, the specification does not require

that end cap **16** "encase" or otherwise fully enclose the end portions **14a, 14b** of elongate support

member **14**. One such instance of partial covering is depicted in Figure 7, below:



FIG. 7

Moreover, RetroLED's proposed construction would nullify and render superfluous claim

language which already explains the nature of the "end cap" as well as its relation to the entire

"lamp support assembly," specifically including the "elongate support member." *See, e.g.*, '835

Patent, claim 1 ("one and only one end cap at each of said opposite end portions of said elongate

support member"); *see also Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed.

Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred

over one that does not do so."); *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396,

1410 (Fed. Cir. 2004) ("[I]nterpretations that render some portion of the claim language

superfluous are disfavored.").

E.     **"Non-Electrically Engage"** (claim 19)

| PLG's Construction | RetroLED's Construction |
|---|---|
| No construction necessary | To engage a mechanical coupling element with a standard gas discharge lamp mount without creating a conductive path between the two |

Aside from the term "non-electrically engage" being easily understandable to one of skill in the art, RetroLED's verbose proposal improperly adds an action step (*e.g.*, "to engage . . . without creating a conductive path") and superfluous structural relationships (*e.g.*, "a mechanical coupling element with a standard gas discharge lamp mount") to apparatus claim 19. Not only are these additions improper, they are unnecessary given already present language in claim 19 (highlighting added):

> powering said plurality of electric lamp units; and wherein respective mechanical coupling elements of the pair of end caps are configured to non-electrically engage respective individual standard mounts located directly opposite one another at the framework that are for supporting a single gas-discharge lamp at the framework.

To the extent RetroLED is seeking to explain the correlation between claim elements, it fails to add anything to the existing language and instead adds terms found nowhere in the intrinsic record  (*e.g.*, "creating," "standard gas discharge lamp mount" and "conductive path"). It is unclear why RetroLED believes these undefined terms are somehow helpful. If anything, the language of RetroLED's proposed construction only serves to compound any supposed confusion. For example, what purpose is served by using "to engage" to define "engage?" Or, how is "to engage . . . without creating a conductive path" any more clear or accurate than "non-

18

electrically engage" when conduction can include far more than just electricity (*e.g.*, heat, sound, vibration, etc.)? RetroLED's proposed construction unnecessarily sows such questions and should be rejected.

Aside from these practical problems, RetroLED's litigation-driven proposal here would essentially nullify dependent claim 20 (much like RetroLED's "function" proposal for the term "mechanical coupling element" discussed above). In particular, by requiring "non-electrically engage" to be amongst "a mechanical coupling element with a standard gas discharge lamp mount," RetroLED's proposal excludes the embodiment wherein the "purely mechanical mounts" replace the "standard mounts." *See, e.g.*, *Kaneka*, 790 F.3d at 1304.

**F.    "Mount"/"Coupling"** (claims 1, 8, 13, 14, 16, and 18-20)

| PLG's Construction | RetroLED's Construction |
|---|---|
| No construction necessary | Mount that supports the weight of a gas-discharge lamp or replacement |

RetroLED has taken the position that the terms "mount" and "coupling" are the same for purposes of the claims of the '835 Patent. Momentarily setting aside the merits of that position, PLG notes that RetroLED's proposed construction runs contrary to the general presumption that different meanings attach to different words. *See CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of . . . different terms in the claims connotes different meanings."). As the Federal Circuit has made clear, "[t]he separate naming of two structures in the claim strongly implies that the named entities are not one and the same structure." *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 701 F. App'x 978, 982 (Fed. Cir. 2017); *see also Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010)

("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention.") (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004)).

A review of the claims and specification demonstrates that RetroLED's proposal falls short. For example, claim 1 recites that (highlighting added):

> a mechanical coupling element at each of said outwardly-facing sides of said end caps, said ==mechanical coupling element configured to engage a single electro-mechanical mount== for a gas-discharge lamp, wherein said mechanical coupling element comprises electrically insulative material and does not retain any electrical conductors along or through said mechanical coupling element for powering the plurality of electric lamp units; and

In other words, the "coupling" is *configured to engage* with the "mount" per the plain language of claim 1 (as well as claim 19 which contains a similar limitation). It is unclear how two disparately named structural elements can be the "same" when the claim limitations clearly explain these elements "engage" one another. Similarly, the specification discloses that "[m]echanical coupling element **18**, which is disposed along outwardly-facing side **16***b* of end cap **16** [] is shaped to engage or be received in the conventional or standard electro-mechanical sockets or mounts **20***a*, **20***b*." *See* '835 Patent, col. 5, ll. 19-25. This arrangement is depicted in the figures, which show a constructed "light support assembly" including elongate support member **14** with end caps **16** having mechanical coupling elements **18** which can then be engaged with mounts **20a, 20b** as shown in the images below (highlighting added):

20



| Fig. 7 with "mechanical coupling element **18**" highlighted | Fig. 23 depicting "mounts **20a**, **20b**" |

Thus, even if the readily understandable terms "mount" and "coupling" actually required construction – which they do not – RetroLED's proposed construction, which would make these disparate elements identical, contradicts the claims and intrinsic record.

In any event, RetroLED's proposal is entirely unreasonable as a practical matter. There is no conceivable benefit (or purported confusion corrected) by using the term "mount" to define "mount." Further, RetroLED's addition of the phrase "support the weight" appears nowhere in the intrinsic record. Even further, RetroLED's proposed construction violates the principle of claim differentiation given that the use of the "mount" as "support" is already recited in dependent claim 8 which states that "each of the mounts [is] configured for supporting a respective opposite end portion or coupler of a gas-discharge lamp." *See Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 WL 928406, at *3 (W.D. Tex. Jan. 23, 2019) (discussing presumption created by doctrine of claim differentiation).

21

G.     **"Low Voltage"** (claims 16, 17, and 19)

| PLG's Construction | RetroLED's Construction |
|---|---|
| No construction necessary | Voltages lower than 110 |

RetroLED's proposal is an obvious attempt to inject a non-infringement argument despite the fact that: (i) there is no basis whatsoever to suggest that the patentee intended the term "low voltage" to be limited as RetroLED seeks; and (ii) the proposal is contradicted by a myriad of technical dictionaries and international electrical engineering communities. RetroLED's argument should be flatly rejected.

Effectively, RetroLED seeks a construction which would exclude certain embodiments so as to shield itself from infringement. Such a limiting construction would require a showing of one of two exceptions: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner*, 669 F.3d at 1365. Any disclaimer of a particular interpretation of a claim "must be  clear and unmistakable" to "one of ordinary skill in the art." *Microlinc, LLC v. Intel Corp.*, No. 2:07-CV-488, 2013 WL 2471551, at *8 (E.D. Tex. June 7, 2013) (citing *Elbex Video, Ltd. v. Sensormatic Electronics Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007)). If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established. *See MIT v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016).

There is no mention whatsoever – in the claims, figures, specification or prosecution history – regarding "low voltage" being within a certain voltage range, let alone excluding voltages above 110. As such, there is no question that the patentee did not act as a

22

"lexicographer." Similarly, there can be no "clear and unmistakable" disclaimer when this proposed range is never mentioned in any prosecution history arguments.

The *only* conceivable basis for RetroLED's proposal is a technical argument based on what one of ordinary skill in the art would supposedly understand "low voltage" to mean. However, PLG attaches hereto a definition from a well-recognized technical dictionary that defines "low voltage" as being understood in the art to be up to 1000 volts. *See, e.g.*, Exhibit 3 hereto (IEEE Standard Dictionary of Electrical and Electronics Terms, The Institute of Electrical and Electronics Engineers, Inc. (Frank Jay, ed., 2nd ed. 1977), at 388) (defining "low-voltage system (electrical power)" as "[a]n electric system having a maximum root-mean-square alternating-current voltage of 1000 volts or less"); *see also Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 WL 928406, at *4, n. 1 (W.D. Tex. Jan. 23, 2019) ("Technical dictionaries may assist a court in 'better understand[ing] the underlying technology' and the way in which one of skill in the art might use the claim terms.") (citing *Phillips*, 415 F.3d at 1318). This understanding is substantiated by the International Electrotechnical Commission (IEC) which defines "low voltage" as voltage in the range 50 to 1000 V AC or 120 to 1500 V DC. *See* Exhibit 4 hereto (https://www.scribd.com/presentation/387761434/High-Voltage-Technology-1) (last visited June 19, 2019). Further, courts have found that "low voltage" includes "up to 1,000 volts" in the context of electrical equipment. *See Varentec, Inc. v. Gridco, Inc.*, No. CV 16-217-RGA, 2017 WL 3731243, at *4 (D. Del. Aug. 30, 2017). Thus, at minimum, "low voltage" should not be construed to exclude voltages less than 1000 volts.

PLG anticipates that RetroLED will attempt to create a technical dispute on this point based on cherry-picked extrinsic evidence. However, there is simply no support in the intrinsic record for such a limiting reading of the understandable phrase "low voltage." As such, there can

23

be no "clear and unmistakable" meaning or disavowal necessary to disrupt the understanding one of ordinary skill in the art would have.

### H. **"Resinous Plastic Extrusion"** (claim 12)

| PLG's Construction | RetroLED's Construction |
|---|---|
| No construction necessary | A synthetic resin that is shaped by forcing [the resin] through a mold |

Once again, RetroLED's proposal serves to create unnecessary confusion by replacing easily understandable terminology with terms and phrases not found in the specification or file history. For example, the term "synthetic" is found nowhere in the intrinsic record. The purpose of this terminology is unclear, but there is no legitimate purpose served by substituting "synthetic resin" for "resinous plastic," which would be readily understandable to a person of ordinary skill in the art.

Further, RetroLED's attempt to limit "extrusion" to a product created by "forcing [the resin] through a mold" runs contrary to the specification which makes clear that "[i]t will be appreciated that the term 'elongate extrusion' is used for convenience, and that elongate support members **14** may be formed via any desired method, such as molding or machining or extruding or the like." *See* '835 Patent, col. 7, ll. 12-16. RetroLED's attempts to exclude these additional embodiments should be rejected. *See, e.g.*, *Kaneka*, 790 F.3d at 1304.

### V. CONCLUSION

For the foregoing reasons, PLG respectfully requests that the Court reject RetroLED's verbose, litigation-driven proposed constructions and instead adopt PLG's position that the disputed claim terms be afforded their plain and ordinary meaning as would be understood by one of ordinary skill in the art.

Dated:  June 19, 2019

Respectfully submitted,

By:  */s/ Wasif H. Qureshi*
Wasif H. Qureshi
Texas State Bar No. 24048155
wqureshi@jw. com
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, Texas  77010
Telephone: (713) 752-4521

Blake T. Dietrich
Texas State Bar No. 24087420
bdietrich@jw.com
**JACKSON WALKER LLP**
2323 Ross Ave., Suite 600
Dallas, TX 75201
Telephone: (214) 953-6000

**COUNSEL FOR DEFENDANT PRINCIPAL
LIGHTING GROUP, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2019, I electronically filed the foregoing and attached documents with the clerk of the court for the U.S. District Court, Western District of Texas, using the Court's electronic case filing system, and thus those documents have been electronically served on counsel of record.

*/s/ Wasif H. Qureshi*
Wasif H. Qureshi