IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISON

| | | |
|---|---|---|
| RETROLED COMPONENTS, LLC, | § | |
| *Plaintiff / Counterclaim-Defendant*, | § | |
| v. | § | Civil Case No.: 6:18-cv-55-ADA |
| PRINCIPAL LIGHTING GROUP, LLC, | § | |
| *Defendant / Counterclaim-Plaintiff*, | § | JURY TRIAL DEMANDED |
| v. | § | |
| PRINCIPAL LIGHTING GROUP, LLC, | § | |
| *Third Party Plaintiff / Third Party Counterclaim-Defendant*, | § | |
| v. | § | |
| REECE SUPPLY COMPANY OF DALLAS, | § | |
| *Third Party Defendant / Third Party Counterclaim-Plaintiff*. | § | |

**RETROLED COMPONENTS, LLC AND REECE SUPPLY COMPANY OF DALLAS'S
REPLY IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT OF INVALIDITY,
PARTIAL SUMMARY JUDGMENT AS TO DAMAGES AND
<u>PARTIAL SUMMARY JUDGMENT AS TO NO WILLFUL INFRINGEMENT</u>**

Declaratory Judgment Plaintiff/Counter-Defendant RetroLED Components, LLC ("RetroLED") and Third-Party Defendant/Third-Party Counter-Plaintiff Reece Supply Company of Dallas ("Reece") respectfully submit this Reply in Support of their Motion for Summary Judgment of Invalidity, Partial Summary Judgment as to Damages and Partial Summary Judgment as to No Willful Infringement ("Summary Judgment Motion"), (Dkt. No. 74-2), and would show the Court as follows:

### I. Introduction

For the reasons discussed below, PLG's Response in Opposition to the Summary Judgment Motion is flawed and cannot overcome the showing that RetroLED and Reece have made in their Motion.

### II. RetroLED and Reece's Motion for Summary Judgment

#### A. PLG did not meet its burden to rebut RetroLED and Reece's *prima facie* case of invalidity; RetroLED and Reece are entitled to Summary Judgment of Invalidity.

PLG raises three substantive issues in opposition to RetroLED and Reece's motion for summary judgment of invalidity. Each of the issues raised by PLG boil down to a claim that the Expert Reports of Mr. Gershowitz are sufficient to rebut RetroLED and Reece's Motion. Or, as PLG contends, there is a battle of the experts in this litigation and that this supposed battle precludes summary judgment of invalidity. (Dkt. No. 88 at 6.) PLG is wrong. There is no battle of experts. As demonstrated in RetroLED and Reece's Motion to Exclude the Testimony of Mr. Gershowitz, Mr. Gershowitz's testimony is not admissible. (Dkt. No. 74-1 at 3-16.) Further, as demonstrated in RetroLED and Reece's Opposition to PLG's Motion for Summary Judgment of Infringement, Mr. Gershowitz's testimony is not competent because it is unsworn and did not comply with 28 U.S.C. § 1746. (Dkt. No. 87 at 3-6.) For these reasons, in its three arguments in opposition to RetroLED and Reece's motion for summary judgment of invalidity, PLG has failed

to comply with Federal Rule of Civil Procedure 56(c) and failed to rebut RetroLED and Reece's motion for summary judgment of invalidity. The motion relating to invalidity should be granted.

> **B.    PLG failed to demonstrate that its predecessor-in-interest marked the SignComp Lite Stick product pursuant to 35 U.S.C. § 287(a) and damages are limited to the time of actual notice.**

On the marking issue, PLG maintains that summary judgment is inappropriate because "there is no product to mark." (Dkt. No. 88 at 4.) PLG ignores the SignComp Lite Stick as a product to be marked—presumably because there are no LEDs attached on the SignComp patent. (*See, e.g.*, Dkt. No. 88 at 10 ("[B]ecause the claims of the '835 Patent in part require electric lamp units (like LEDs) be positioned on the extrusion, an extrusion without such electric lamp units would not be covered by the '835 Patent.").) Because PLG ignores the broad scope of 35 U.S.C. § 287(a) and applicable Federal Circuit precedent, RetroLED and Reece are entitled to partial summary judgment that damages, if any, do not start until their receipt of actual notice.

> **C.    PLG ignores the full scope of 35 U.S.C. § 287(a).**

35 U.S.C. § 287(a) provides, in relevant part:

> ***Patentees, and persons making, offering for sale, or selling*** within the United States any patented article ***for or under them***, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . .

35 U.S.C. § 287(a) (emphases added).

PLG has failed to account for the full scope of this statutory provision by limiting the analysis to N. Glantz and, not extending it to N. Glantz's customers.

PLG does not appear to contest that the SignComp Lite Stick[1] was not marked and there is apparently no dispute that, if the SignComp Lite Stick is combined with LEDs, it would practice at least one claim of the '835 patent. (*See generally* Dkt. No. 88 at 9-13.)

So, under § 287(a), if any person for or under the patentee has offered for sale or sold the SignComp Lite Stick with LED lights mounted or attached, PLG is not entitled to damages prior to actual notice. Further, under § 287(a), if any person for or under the patentee has combined the SignComp Lite Stick with LED lights mounted or attached,[2] PLG is not entitled to damages prior to actual notice.

PLG attempts to evade these strictures of § 287 with the carefully edited Declaration of Davey Glantz. (*See generally* Dkt. No. 88-3.) Mr. Glantz declares that "N. Glantz's sales of the SignComp extrusion have not included LED or other lighting units ***mounted or attached to the extrusion***. In other words, N. Glantz ***has not procured from SignComp or sold*** a product as arranged in the above-referenced graphical rendering." (Dkt. No. 88-3, Glantz Decl., at ¶ 4 (emphases added).) But, as noted above, the marking statute provides that "[p]atentees and persons ***making, offering for sale, or selling*** within the United States any patented article for or under them . . . ." 35 U.S.C. § 287(a) (emphasis added). Therefore, Mr. Glantz's statement avoids two critical portions of the marking statute: (1) the making within the United States any patented article and (2) the offering for sale within the United States any patented article. As the website cited by Ms. Cornelius, RetroLED and Reece, and Mr. Glantz makes clear, the sold extrusion is meant to be combined with LED lights. (*See, e.g.*, Dkt. No. 74-3, Bustamante Decl., at ¶ 29 (describing the

---

[1] For the purposes of this Reply, and only for this limited purpose, RetroLED and Reece will presume that the SignComp Lite Stick was never sold by N. Glantz (or anyone else) with the LEDs attached or mounted on the extrusion/elongate support member. Of course, PLG bears the burden of proving this is so and has not done so.

[2] This reflects the "making" limitation in § 287(a).

Sign Comp Light Stick product, in part, as "[f]or new LED lighting construction, or retrofitting fluorescent lighting *with LED lighting*." (emphasis added); *see also, e.g.*, Dkt. No. 74-10, Ex. G, Cornelius Report, at ¶ 128 ("I also understand that the SignComp Lite Stick has never been sold with LEDs attached to the extrusion. Rather, ***customers could purchase the LED modules and attach them to the extrusions prior to installation***." (emphasis added).) Thus, PLG ignores the fact that the customers of N. Glantz are combining the extrusion (elongate support member), the end caps (two are sold with the extrusion) and the LED lights and thus "making" a patented article under at least one claim of the '835 patent and 35 U.S.C. § 287(a).

Further, because N. Glantz is a distributor,[3] (Dkt. No. 88-3 at ¶ 2 ("In general, N. Glantz is a distributor of graphics, lighting, and electrical sign supplies.")), these customers are presumably selling the patented article downstream to others.[4] Thus, PLG or SignComp, the original assignee of the '835 patent, needed to ensure that its licensees, including N. Glantz and/or N. Glantz's customers, which were licensees of the '835 patent, marked the product. *See Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("A patentee's licensees must also comply with § 287, because the statute extends to persons making or selling any patented article for or under the patentee." (quotation and alteration omitted)). It doesn't matter whether the license held by N. Glantz or their customers was express or implied. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994) (finding

---

[3] Black's Law Dictionary (11th ed. 2019) (defining "distributor" as "A wholesaler, jobber, or other manufacturer or supplier that sells chiefly to retailers and commercial users.")

[4] To the extent that PLG complains that this is not proof that these items should be marked, it is a further indication that PLG does not understand its burden under the marking statute. *See Arctic Cat*, 876 F.3d at 1366. PLG has the burden to demonstrate that the product was not made or sold by the customers of PLG in an infringing manner or that the product was appropriately marked.

4

that "there is no reason why section 287 should only apply to express licensees and not to implied licensees").

Federal Circuit precedent *Amsted Industries, Inc. v. Buckeye Steel Castings Co.* is instructive. In *Amsted*, the plaintiff-patentee made and sold a low profile center plate for railway cars to rail car builders for assembly in a patented combination. *Amsted*, 24 F.3d at 180. Because the patented article was not marked, the district court limited Amsted's damages to the time that actual notice of infringement. *Id.* at 184. In *Amsted*,

> The district court held that section 287 limited Amsted's recovery of damages because Amsted's customers, to whom Amsted sold one element of the patented combination with the expectation that they would use that element to make and sell the patented invention, were implied licensees who were "making or selling the patented article for or under Amsted" within the meaning of section 287. The court reasoned that "the distribution or manufacturing arrangement of a patentee, unilaterally chosen by the patentee, cannot be allowed to relieve the patentee of its duty to mark under Section 287."

*Amsted*, 24 F.3d at 184-85.

Amsted appealed this issue and the Federal Circuit affirmed it. *Id.* at 185.

As in *Amsted*, PLG and N. Glantz sold the SignComp Light Stick product with the intention that their customers attach or mount LED lights to the extrusion/elongate support member,[5] practicing at least one claim of the '835 patent and the obligation to mark obtains.[6] Further,

---

[5] PLG should not be able to argue otherwise as it has contended that RetroLED's end caps—and the end caps alone—render RetroLED liable as a contributory infringer under § 271(c). (Dkt. No. 26 at ¶ 14.) PLG bases this contention on "RetroLED's marketing and sales of, for example, its 'Rigid' end caps." *Id.* The SignComp LED Lite Stick Kit also "comes with 2 caps," which according to PLG's accusation against RetroLED would be infringing under § 271(c) but for the fact that they are authorized. (Dkt. No. 74-3, Bustamante Decl. at ¶ 29.) If the policy of providing notice is to be honored, a broad reading of 35 U.S.C. § 287(a) is warranted—at least broad enough to support a finding that the SignComp Lite Stick product is a "patented article" in this case.

[6] Such a finding is supported by the testimony of Dr. J. Bryan Vincent, who testified that N. Glantz "had been operating **under an agreement to use the patent** in some way, but felt like it really wasn't core to their business, and I guess married us up with SignComp." (*See* Dkt. No. 74-13, Ex. J, J. Bryan Vincent Tr. at 84:17-25 (emphasis added).) In other words and according to Dr. Vincent,

5

SignComp and N. Glantz sold "one element of the patented combination with the expectation that [the customers] would use" the SignComp Light Stick product "to make and sell the patented invention." *See Amsted*, 24 F.3d at 184-85. As a result, each of N. Glantz's customers and SignComp's customers who purchased the SignComp Lite Stick product were implied licensees who had an obligation to mark when they made or sold the product pursuant to 35 U.S.C. § 287.

After *Amsted*, even if the declaration of Mr. Glantz is credited in its entirety, PLG has failed to meet its burden. It has not demonstrated entitlement to damages prior to RetroLED's and Reece's receipt of actual notice of infringement under ¶ 287(a).[7] RetroLED and Reece are entitled to partial summary judgment that damages cannot begin until their receipt of actual notice.

### D.  PLG has failed, as a matter of law, to demonstrate its entitlement to lots profits damages.

PLG has provided no argument specifically on the point as to why RetroLED and Reece are not entitled to partial summary judgment of no lost profits as a matter of law.

### E.  Even if PLG is entitled to lost profits, as matter of law, such damages should cease when PLG licensed the '835 patent to SloanLED.

PLG relies heavily on a single paragraph from Ms. Cornelius's expert report to attempt to rebut RetroLED and Reece's Partial Summary Judgment of No Lost Profits after PLG licensed the '835 patent to SloanLED. (Dkt. No. 88 at 15-16 (citing to Cornelius Report at ¶ 83).) That paragraph is reproduced here

---

SignComp and N. Glantz's agreement acknowledges the product's use of the patent and yet still SignComp, N. Glantz and N. Glantz's customers failed to mark the product.

[7] PLG could complain that the requirement to mark could lead SignComp to run afoul of 35 U.S.C. § 292, which prohibits marking of an unpatented article. This argument, however, has already been rejected and SignComp could have marked its products with a marking such as "for use under U.S. 9,311,835" or could have had its purchaser-licensees mark the patented combination with a mark such as "licensed under U.S. 9,311,835." *See Amsted*, 24 F.3d at 185 (rejecting the false marking argument and suggesting either of the two approaches discussed to comply with the marking statute). PLG has shown no evidence that SignComp did so.

> As shown previously, in a Reece prepared comparison of different products available in the market, PLG's Tap Out Stik was the lowest priced non-Reece product, and was also ranked brighter than the next lowest priced product – the Sloan PrismBEAM. Mr. Hartford testified that the 'top two factors' for many customers are price and brightness. ***As such, the only available product on the market that would have been acceptable to customers that purchased the accused Reece Stick products would have been PLG's Stik products***. In particular, based on an analysis of PLG's sales information, as well as testimony in the record ***and discussions with Dr. Bryan Vincent, I understand that PLG's Tap Out Stik is the most likely alternative product that would have been sold to customers that purchased Reece's accused products.***

(Dkt. No. 74-10, Ex. G, Cornelius Report, at ¶ 83 (emphases added).)

There are three major problems with PLG's reliance on this paragraph. First, the Cornelius report is not competent summary judgment evidence, it is not an affidavit and does not comply with 28 U.S.C. § 1746. (*See generally* Dkt. No. 74-10, Ex. G, Cornelius Report (providing no sworn statement or statement in compliance with 28 U.S.C. § 1746)); *see also Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) ("Unsworn expert reports do not qualify as affidavits or otherwise admissible evidence for the purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment." (alterations, quotations and citation omitted)). Second, the Cornelius Report engages in inadmissible speculation as it fails to rely on "sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999); *see also Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 3882608, at *7 (N.D. Cal. June 23, 2015) (examining *Panduit* factor 1 and finding that "[if the expert] had investigated what portion of [defendant's] customers may have ultimately purchased [plaintiff's product] in such a scenario and based his lost profits analysis on those numbers, this might be a different story. But on this record there is simply no factual or logical basis for allowing lost profits calculations on [Defendant's] entire market share."). Here, there is

7

no sound economic proof. Third, Cornelius relies on discussions with Dr. Vincent, a principal of PLG, and does not make clear she is merely assuming these "facts" are true. (*See* Dkt. No. 74-10, Ex. G, Cornelius Report, at ¶ 83.) This renders her opinion unreliable. *See Craig v. Xlear, Inc.*, No. 2:16-CV-00392-DB-EJF, 2019 WL 1119429, at *12 (D. Utah Mar. 11, 2019) (collecting cases and finding that the expert's "conclusions as to key facts in this case—lacking indication that they function as assumptions underlying his damages calculation—are improper.")

Ms. Cornelius's opinions regarding lost profits, generally, and lost profits after the Sloan LED license of the '835 patent, specifically, are inadmissible and not competent summary judgment evidence and RetroLED and Reece are entitled to partial summary judgment of no lost profits.

### F. RetroLED and Reece have not committed willful infringement as to any claim of the '835 patent.

The underlying facts raised by RetroLED and Reece in their Motion regarding willfulness, (*see* Dkt. No. 74-2 at 14), demonstrate that RetroLED and Reece have not engaged in the type of behavior "to establish that [their] conduct ***rose to the level of wanton, malicious, and bad-faith behavior required for willful infringement***." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 1108, 206 L. Ed. 2d 180 (2020). No reasonable jury could find otherwise and RetroLED and Reece are entitled to partial summary judgment of no willfulness.

### III. PLG's false or misleading statements in its Response to RetroLED's and Reece's Motion for Summary Judgment.

In its Response, PLG has made a number of false or misleading statements that cannot go unmentioned.

PLG makes a number of claims relating to RetroLED's and Reece's knowledge of the patents-in-suit that are, at best misleading. For example, in its Response, states

> What is relevant is that Retro/Reece have unequivocally admitted that they were aware of the '835 Patent prior to PLG's filed claims of infringement against them and continued to intentionally infringe, especially with the evidentiary backdrop that Retro/Reece were targeting PLG's products and customer base with the accused products.

(Dkt. No. 88 at 2-3.)

These statements are misleading because they conflate awareness of the patent with awareness of infringement. *Cf. Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.") Additionally, the first statement elides the fact that PLG's products do not practice the patent-in-suit. (Dkt. No. 74-3, Bustamante Decl., at ¶¶ 32-34.) Finally, both statements ignore the fact that RetroLED brought this declaratory suit to determine its non-infringement and the invalidity of the '835 patent.

As a further example, with respect to the Bustamante Declaration,[8] PLG attempts to mislead the Court by cropping and taking out of context RetroLED and Reece's counsel's statement. *See Black v. CE Soir Lingerie Co.*, No. CIV.A. 2:06-CV-544, 2007 WL 4353669, at *6 (E.D. Tex. Dec. 11, 2007) (finding that a party's statement which cropped and took a quote out of

---

[8] To the extent that PLG seeks to strike the Bustamante Declaration, this request should be denied. Far from being the opinions or factual arguments that PLG believes the declaration to be, the declaration is merely a mechanism to provide the Court with the relevant factual authority to be used in consideration of RetroLED and Reece's motion. An examination of the two examples provided by PLG reveals as much. An examination of the two cited examples—assuming that they are in paragraphs 68 and 106—reveals that the cited paragraphs do nothing more than set up the introduction of excerpts of the Cornelius Report and the Wood Opening Report, respectively. There is nothing improper about this. *See OFI Int'l, Inc. v. Port Newark Refrigerated Warehouse*, No. 2:11-CV-06376 WJM, 2015 WL 140134, at *3 (D.N.J. Jan. 12, 2015) (noting "that filing documents pursuant to attorney declaration is a well-established practice").

context to be misleading); *cf. Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1356 (Fed. Cir. 2003) (noting that cropping quotations to alter their meaning should be sanctionable under Rule 11). In its Response, PLG cites to Paragraph 31 of the Bustamante Declaration and makes the following statement: "***Even Retro/Reece's counsel admitted*** that 'there is no indication that the SignComp Lite Stick product is covered by any of the claims or practices the '835 patent (or any other patent)[.]'" (Dkt. No. 88 at 13, n.17 (emphasis added and citation omitted).) Looking to the actual paragraph cited and its context, it is clear that this is not what was admitted. Paragraph 31 of the Bustamante Declaration reads as follows:

> While the webpage at [url for the Sign Comp Lite Stick at nglantz.com in 2017] includes a "Buy Now" button, ***there is no indication that the SignComp Lite Stick product is covered by any of the claims or practices the '835 patent (or any other patent)*** as demonstrated by the two screen captures above.

(Dkt. No. 74-3, Bustamante Decl., at ¶ 31 (emphasis added).) In other words, the Bustamante Declaration clearly makes the point that the SignComp product was not marked and, contrary to the misleading implication of PLG, does ***not*** say the product is not an infringement.

There can be no excuse for PLG's misleading of the Court.

### IV.     Conclusion

As demonstrated above, PLG, in its Response, has failed to rebut RetroLED and Reece's motion. For these reasons, RetroLED and Reece respectfully request that the Court grant, on all grounds requested, their Summary Judgment Motion.

Dated: July 28, 2020

                                          Respectfully Submitted,

                                          */s/ John M. Bustamante*
                                          J. Scott Denko
                                          State Bar No. 00792457
                                          denko@dcllegal.com
                                          John M. Bustamante
                                          State Bar No. 24040618
                                          bustamante@dbiplaw.com
                                          Julian Alejandro Rios
                                          State Bar No. 24116971
                                          rios@dbiplaw.com
                                          **DENKO & BUSTAMANTE LLP**
                                          2905 San Gabriel Street, Suite 205
                                          Austin, Texas 78705
                                          Telephone: (512) 580-2420
                                          Facsimile: (737) 236-8343

                                          **ATTORNEYS FOR PLAINTIFF RETROLED COMPONENTS, LLC AND THIRD PARTY DEFENDANT REECE SUPPLY COMPANY OF DALLAS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true a correct copy of the above and foregoing document was filed with the clerk of Court via the CM/ECF system on July 28, 2020, which will serve and notify all counsel of record.


Dated: July 28, 2020                                             Respectfully submitted,

                                                                 */s/ John M. Bustamante*
                                                                 John M. Bustamante