# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISON

|  |  |  |
|---|---|---|
| **RETROLED COMPONENTS, LLC,** | § | |
| *Plaintiff / Counterclaim-Defendant,* | § | |
| | § | |
| **v.** | § | **Civil Case No.: 6:18-cv-55-ADA** |
| | § | |
| **PRINCIPAL LIGHTING GROUP, LLC,** | § | |
| *Defendant / Counterclaim-Plaintiff,* | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **PRINCIPAL LIGHTING GROUP, LLC,** | § | |
| *Third Party Plaintiff / Third Party* | § | |
| *Counterclaim-Defendant,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **REECE SUPPLY COMPANY OF DALLAS,** | § | |
| *Third Party Defendant / Third Party* | § | |
| *Counterclaim-Plaintiff.* | § | |
| | § | |

**RETROLED COMPONENTS, LLC AND REECE SUPPLY COMPANY OF DALLAS'S
REPLY IN SUPPORT OF THEIR
MOTION TO EXCLUDE THE OPINION TESTIMONY OF
<u>MR. MICHAEL GERSHOWITZ AND MS. CANDICE K. Q. CORNELIUS</u>**

Declaratory Judgment Plaintiff/Counter-Defendant RetroLED Components, LLC ("RetroLED") and Third-Party Defendant/Third-Party Counter-Plaintiff Reece Supply Company of Dallas ("Reece") respectfully submit this Reply in Support of their Motion to Exclude the Opinion Testimony of Mr. Michael Gershowitz and Ms. Candice K. Q. Cornelius ("*Daubert* Motion"), (Dkt. No. 74-1), and would show the Court as follows:

## I.     Introduction

For the reasons discussed below, PLG's Response in Opposition to RetroLED and Reece's *Daubert* Motion is full of vitriol and outrage but does nothing to refute the motion itself.

### A.     PLG continues to mis-understand the Court's claim construction and its obligations thereunder.

Although PLG continues to maintain that RetroLED and Reece fail to understand the claim construction process, (*see generally* Dkt. No. 90, Resp., at 3), it does nothing to actually rebut the caselaw cited by RetroLED and Reece through this Dispositive and *Daubert* Motion process. In its response, PLG cites to *Canrig Drilling Tech. Ltd. v. Trinidad Drilling L.P.*, No. CV H-15-0656, 2016 WL 7188657, at *6 (S.D. Tex. Dec. 12, 2016). (Dkt. No. 90, Resp., at 4.) *Canrig*, to the extent it is applicable, stands for the unremarkable proposition that an expert is not allowed to offer his opinion as to "proper claim construction." *Canrig*, 2016 WL 7188657, at *6 ("[The expert] will not be permitted to present to the jury any opinions regarding proper claim construction."). All that RetroLED and Reece seek from Mr. Gershowitz is that he provide his understanding of how a person of ordinary skill in the art would understand the terms at the of the invention.[1] *See*

---

[1] To the extent that PLG continues to take issue with the term "define," it is unclear what would satisfy them. Define can and should be understood as a colloquial shorthand for "provide your understanding of what one of ordinary skill in the art would understand a term to mean at the time of the invention." So, when RetroLED and Reece inquire as to Mr. Gershowitz's definition of a term, they are seeking his "understanding of what one of ordinary skill in the art would understand a term to mean at the time of the invention."

*TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-954-RGA, 2019 WL 5626638, at *1 (D. Del. Oct. 31, 2019) ("When a court does not construe a term or orders that the ordinary meaning applies, expert testimony on the understanding of a skilled artisan is appropriate to assist the jury."); *see also Gree, Inc. v. Supercell Oy*, No. 2:19-cv-000071 JRG-RSP, 2020 WL 3893697, at *2 (E.D. Tex. July 9, 2020) (rejecting motion to strike because expert was "giving an opinion as to what a POSITA would consider the plain meaning" and this "does not amount to claim construction, and is properly presentable to the jury"). PLG has provided no authority in opposition to this proposition.

### B.     Mr. Gershowitz's testimony remains *ipse dixit*.

What RetroLED and Reece seek from Mr. Gershowitz is what the law requires: that an expert explain his reasoning for his opinion. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring, *inter alia*, that expert provide "a complete statement of all opinions the witness will express and the basis and reasons for them").

PLG dedicates five pages of its Response providing excerpts from Mr. Gershowitz's reports and correlating them with the claim terms that this Court has construed to have their "plain and ordinary meaning to one of ordinary skill in the art." (*See generally* Dkt. No. 90, Resp., at 6-10.) PLG, like its expert, misses the point.

The reasoning behind Mr. Gershowitz's opinions must be more than just pointing at an item and saying that "this is an elongate support member" or "this is something that a person of ordinary skill in the art would consider an elongate support member." *See United States v. Noel*, 581 F.3d 490 (7th Cir. 2009) (rejecting expert testimony "[s]he, in essence, told the jury nothing more than, 'I am familiar with the definition of child pornography, and this meets that definition because I said so.'"); *cf. Miller v. United Parcel Serv., Inc.*, No. C 03-2405 PJH, 2004 WL 1771571, at *16 (N.D. Cal. Aug. 6, 2004) (finding expert testimony unreliable under *Daubert*

2

where expert merely stated the defendant's actions were "inconsistent with recognized management practices" but did not point to any source for the "'practices,' but rather simply asserts that they exist"), aff'd, 196 F. App'x 489 (9th Cir. 2006).

In other words, Mr. Gershowitz must point to something more than an arcane and undefined well of knowledge to provide the reasoning for his opinion. He has not done so. His testimony should be excluded.

### C. Mr. Gershowitz's opinions contradict the Court's claim construction, import limitations and vary depending on whether he is considering infringement or invalidity.

In arguing that Mr. Gershowitz is not importing limitations to the "plain and ordinary meaning" of the terms, PLG claims, in part, that Mr. Gershowitz's is merely analyzing obviousness. (*See* Dkt. No. 90, Resp., at 12.) This is disingenuous at best.

In order to overcome the disclosures of certain prior art references, Mr. Gershowitz discovers (presumably from the arcane and undefined well of knowledge that he has) certain limitations that are not in the '835 patent. As noted in the *Daubert* Motion, Mr. Gershowitz points to three limitations: 1) the elongate support member must be rigid enough to span 120 inches, (Dkt. No. 74-25, Ex. V, Gershowitz Tr., at 96:10-97:12; see also Dkt. No. 74-24, Ex. U, Gershowitz Rebuttal Report, at ¶ 124); 2) a requirement for cost effectiveness contending that a circuit board would be too cost prohibitive to serve as an elongate support member, (Dkt. No. 74-25, Ex. V, Gershowitz Tr., at 108:20-110:11; see also Dkt. No. 74-24, Ex. U, Gershowitz Rebuttal Report, at ¶ 124); and 3) a requirement that any elongate support member must act alone in supporting the "electric lamp units." (Dkt. No. 74-24, Ex. V, Gershowitz Tr., at 121:11-24; see also Dkt. No. 74-24, Ex. U, Gershowitz Rebuttal Report, at ¶ 197.)

In raising this issue, PLG states that

> claim 1 of the '835 Patent requires that the recited elongate support member and end caps be positioned between two mounts opposite each other along a sign frame (i.e., the elongate support member must extend the side-to-side length of the sign) – and so it is unreasonable for Retro/Reece to argue that PLG is reading in some extraneous "commercial purposes" length requirement into the claims.

(Dkt. No. 90, Resp., at 11.)

PLG, however, studiously avoids stating Mr. Gershowitz's actual opinion: "a printed circuit board would have insufficient rigidity to span the length of the interior of a commercial sign (*which are normally at least ~2-10 feet long*) while also bearing the weight of numerous LED arrays and wiring." (Dkt. No. 74-24, Ex. U, Gershowitz Rebuttal Report, at ¶ 123 (emphasis added).) PLG avoided this language because it makes clear that Mr. Gershowitz is not just talking about any "'commercial purposes' length requirement" but one that specifically can run to 120 inches, or 10 feet. PLG's argument is without merit.

The Court should find that Mr. Gershowitz has been improperly importing limitations when it suits PLG's case and should strike his opinion testimony.[2]

### D. Mr. Gershowitz should be precluded from relying on documents not produced during discovery.

Mr. Gershowitz relied on a number of documents that were not produced during fact discovery. (*See* Dkt. No. 74-3, July 7, 2020 Bustamante Decl., at ¶¶ 81-84.)

PLG's argument regarding who brought up safety first is not only irrelevant but redolent of a kindergarten fight—"he started it." The Court should ignore it.

---

[2] Of course, this tactic of using an elastic understanding of the claim terms is only available because Mr. Gershowitz did not define the claim term (or, to satisfy PLG, state his understanding of what one of ordinary skill in the art would understand the claim term to be at the time of the invention) at the outset.

RetroLED and Reece only seek to preclude Mr. Gershowitz's reliance on documents that they believe were in PLG's custody, care and control during fact discovery but withheld. This makes the case cited by PLG inapposite. (Dkt. No. 90, Resp., at 13, n.10 (citing *Lyondell Chem. Co. v. Albemarle Corp.*, No. CIV. A. 1:01-CV-890, 2007 WL 5517453, at *3 (E.D. Tex. Feb. 28, 2007)). *Lyondell* dealt with an expert relying on Material Safety Data Sheets. *Lyondell*, 2007 WL 5517453, at *3. Material Safety Data Sheets are informational sheets provided by the United States Department of Labor through the Occupational Safety and Health Administration. *See https://www.osha.gov/Publications/OSHA3514.html* (discussing Material Safety Data Sheets) (last accessed July 28, 2020). Unlike the Material Safety Data Sheets in *Lyondell* or the various third party material relied on by both Mr. Gershowitz and Mr. Wood, the production at PLG 4871-4885 was in the custody, care or control of PLG. When PLG chose not to produce these documents during fact discovery, it forfeited its right to rely on these documents during this litigation. *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.")

For this reason, the Court should grant RetroLED and Reece's motion to exclude the testimony of Mr. Gershowitz on this basis.

> ### E.  Mr. Gershowitz should be precluded from testifying regarding the prosecution and issuance of the '005 Patent.

There is little to no relevance of any testimony regarding United States Patent No. 10,222,005 (the "'005 patent") that was issued to Sidney Norton and Curtis Roys, the principals of RetroLED, on March 5, 2019 and titled "Method and assembly for replacing fluorescent lights." *See* Fed. R. Evid. 402. Further, to the extent that any testimony regarding the

'005 patent is relevant,[3] any relevance is outweighed by the risk of confusing the issues or misleading the jury. *See* Fed. R. Evid. 403.

> **F.     The Court should preclude the expert opinion of Ms. Cornelius because her opinion depends on information not produced in fact discovery.**

PLG goes to great lengths to dispute RetroLED and Reece's contention that the information relied on by Ms. Cornelius in her expert report was made available during fact discovery. For example, in response to RetroLED and Reece's claim that this discovery was not produced, PLG resolutely and with outrage avers: ***That accusation is false.*** (Dkt. No. 90, Resp., at 16 (emphasis in original).) PLG then proceeds to outline how the information was produced during fact discovery. There is one problem, however. PLG does not actually cite or present the documents it contends were produced during discovery. (*See generally* Dkt. No. 90, Resp., at 16-18.)

In light of PLG's contention that RetroLED and Reece's counsel has lied, counsel returned to the documents produced in fact discovery and performed an additional review. (*See* July 28, 2020 Bustamante Decl., at ¶¶ 17-29.) Again, this would have been easier had PLG provided Bates references for the documents that were purportedly produced during fact discovery.

In that review, counsel for RetroLED and Reece found that—by expanding the scope of the search for documents that could plausibly qualify as "financial documents"—there were a grand total of 13 pages that qualify as "financial documents." (*Id.*) Removing duplicative documents and documents that were not responsive to document requests related to financial information, there were four pages of documents. (*Id.*) Removing two charts, there were two pages of documents (that reputedly were the source of the charts). (*Id.*) These two pages of documents

---

[3] PLG and Mr. Gershowitz's desire to rely on the '005 patent simply highlights the problems with their approach to the claim terms of the '835 patent. After all, if the '005 patent is relevant and before the jury, will the Court be required to construe the claims of that patent as well? After all, it would be "against the law" for Mr. Gershowitz to do so. (Dkt. No. 90, Resp., at 12.)

were produced the day before the close of fact discovery and after the deposition of Dr. Vincent, PLG's corporate representative on financial matters. (*Compare* July 28, 2020 Bustamante Decl. at ¶ 29 with Dkt. No. 59 (setting fact discovery cutoff for March 6, 2020) *with* Dkt. No. 74-13, Ex. J, Dr. J. Bryan Vincent Tr., at 1 (noting deposition date of March 3, 2020).)

Yet, somehow, PLG contends that the hundreds of pages of financial information relied upon by Ms. Cornelius were produced.[4] (*See generally* Dkt. No. 74-10, Ex. G, Cornelius Report, at App'x A & Exs.)

Someone has made a false statement here but it is not counsel for RetroLED and Reece.

In light of PLG's failure to produce—during fact discovery—the information that Ms. Cornelius relied upon in her report,[5] Ms. Cornelius should be excluded from testifying regarding information that was not produced.

### G.     Ms. Cornelius is not allowed to rely on hearsay-on-hearsay.

PLG appears to have missed the point of this issue. RetroLED and Reece's complaint is not that Ms. Cornelius relied on the personal knowledge of Dr. Vincent—or anyone else. The issue

---

[4] This argument is representative of many of PLG's arguments: find a small, inconsequential issue and expand it to misconstrue the original statement. For example, RetroLED and Reece state: "Ms. Cornelius necessarily had to—and did rely on—financial information obtained by Ms. Cornelius from PLG." (Dkt. No. 74-1, Mot. at 17 (citing to specific paragraphs of the Cornelius Report that, in turn, cite to specific exhibits).) PLG responds: "PLG produced in fact discovery the sales and profit information Retro/Reece asked for in their discovery requests – i.e., sales/profits information on PLG's Stik™ products from 2016 onward (from the issuance of the '835 Patent) as well as product-specific quarterly reports demonstrating units and revenue sold during the damages period." (Dkt. No. 90, Resp., at 16.) Thus making it appear—without explicitly stating—that PLG had produced the documents complained of—despite the fact that, at best, PLG produced four pages of relevant, responsive financial information during fact discovery. There is a pattern of such distortion throughout the briefing for the *Daubert* motions and the summary judgment Motions.

[5] PLG appears to contend that RetroLED and Reece have either waived this claim or acquiesced to it because Mr. Jordan did not raise this issue in his report. (Dkt. No. 90, Resp., at 16.) This is a red herring. Mr. Jordan was under no obligation to raise every issue in Ms. Cornelius's report. Nor would Mr. Jordan be the best—or even an appropriate—person to address PLG's procedural failures; the Court is.

is that Ms. Cornelius—in the cited paragraphs—has relied on improper opinion testimony or hearsay-on-hearsay. (*See* Dkt. No. 74-1, Mot. at 18-19; *see also* Dkt. No. 74-3, July 7, 2020 Bustamante Decl. at ¶¶ 68-76.) Ms. Cornelius can rely on hearsay but cannot rely on hearsay-on-hearsay unless each link is qualified by an exception. Fed. R. Evid. 805. PLG makes no showing that this is the case and Ms. Cornelius's testimony should be excluded on this basis.

### H. Ms. Cornelius should not be permitted to rely on flawed opinions of Mr. Gershowitz.

For all the reasons that Mr. Gershowitz's opinion testimony is unreliable as discussed *infra* and in the Motion, Ms. Cornelius should not be permitted to rely on that evidence.

### I. Like the proposed testimony of Mr. Gershowitz, Ms. Cornelius's lost profits testimony is based on little more than a naked statement of because I said so.

Like the testimony of Mr. Gershowitz, Ms. Cornelius's testimony is *ipse dixit*.

PLG relies on an unpublished slip opinion from the District of Minnesota to attempt to rebut this position.[6] (Dkt. No. 90, Resp., at 21-22, n.18.) PLG's reliance is misplaced and—importantly—PLG has cropped and selectively quoted from the 3M Opinion.

PLG appears to cite to the 3M opinion for the proposition that Ms. Cornelius's market definition is appropriate.[7] (*Id.*) RetroLED and Reece's complaint, however, is not that Ms. Cornelius's definition of the market is incorrect (though it may be). RetroLED and Reece's complaint is that Ms. Cornelius did not define the market. In the 3M Opinion, the court—and the expert—explicitly define the market in that case: "the disposable paint cup market, [which is a segment of] the paint spraying and mixing market." (Ex. H, 3M Opinion, at 21.) Here, Ms.

---

[6] PLG cites to *3M Innovative Prop. Co. et al v. Louis M. Gerson Co., Inc.*, Civil No. 08-4960 (JRT/FLN), Dkt. No. 135 at p. 27 (D. Minn. Mar. 31, 2011) ("3M Opinion")).
[7] Notably, but perhaps not surprisingly, PLG does not attach the actual slip opinion as an exhibit to its Response. For the Court's convenience, RetroLED and Reece attach the 3M Opinion to this Reply as Exhibit H.

Cornelius repeatedly refused to define the market that she used to determine lost profits. (*See* Dkt No. 74-3, July 7, 2020 Bustamante Decl. at ¶ 61-63.)

Additionally, even the Court in the *3M* was skeptical of the expert's reliance on the testimony of the parties and only allowed the testimony, *inter alia*, in light of the expert's "prior experience analyzing and testifying about patent markets." (Ex. H, 3M Opinion, at 22.) In fact, the Court noted that the expert's "report *may be lacking in clearly defined 'sound economic principles,*' . . . .[8]" (*Id.* (emphasis added).) For these reasons, the 3M Opinion is not persuasive and should not be followed by the Court.

Further, as discussed in the Motion, Ms. Cornelius relies on anecdotal evidence to reach the conclusion that PLG is entitled to lost profits for 100% of the sales—despite the fact that the only hard data demonstrates a much smaller overlap of sales as between the parties. (Dkt. No. 74-1, Mot., at 22-23.) This, simply put, is unsupportable and demonstrates that Ms. Cornelius has not used sound economic principles in her analysis of lost profits in this case. *See Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) (requiring "sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture")*; see also Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 3882608, at *7 (N.D. Cal. June 23, 2015) (examining Panduit factor 1 and finding that "[if the expert] had investigated what portion of [defendant's] customers may have ultimately purchased [plaintiff's product] in such a scenario and based his lost profits analysis on those numbers, this might be a different story. But on this record there is simply no factual or logical basis for allowing lost profits calculations on [Defendant's] entire market share.").

---

[8] This language is found in the middle of the quote relied upon by PLG. (*See* July 28, 2020 Bustamante Decl., at ¶ 31-36.) Yet, PLG omitted this critical language. (*Id.*)

For these reasons and those set forth in the *Daubert* Motion, the Court should exclude the opinion testimony of Ms. Cornelius as to lost profits.

## II.    PLG's falsely states that RetroLED and Reece have admitted to infringement.

Without citation, PLG states, "Retro/Reece have admitted direct and induced infringement. . . ." (Dkt. No. 90, Resp., at 2.) RetroLED and Reece have done no such thing: RetroLED and Reece have each denied infringement in their respective answers.[9] Once this occurs, the burden is on PLG to prove infringement and does not shift.[10] *See Imhaeuser v. Buerk*, 101 U.S. 647, 662 (1879) (*"[T]he burden to prove infringement never shifts if the charge is denied in the plea or answer."*). The Court should not and cannot accept that RetroLED and Reece have admitted infringement as PLG contends.

## III.    Conclusion

For all the above reasons, RetroLED and Reece respectfully request that the Court grant, on all grounds requested, their Daubert Motion.

---

[9] (*See* Dkt. No. 28 at ¶ 11 ("RetroLED denies that it infringes any valid claim of the '835 Patent."), ¶ 13 ("RetroLED denies that it has infringed any valid claim of the '835 Patent under 35 U.S.C. § 271(b), whether literally or under the doctrine of equivalents.") & ¶ 14 ("RetroLED denies that it has infringed any claim of the '835 Patent under 35 U.S.C. § 271(c)."); *see also* Dkt. No. 51 at ¶ 15 (denying all allegations in paragraph 15, including a general allegation of infringement), 16 ("Reece denies that it is infringing any valid claim of the '835 Patent under 35 U.S.C. § 271(a) and denies that the Rigid end caps provided by RetroLED infringe any valid claim of the '835 Patent.") & ¶ 19 ("Reece denies that it has infringed any valid claim of the '835 Patent under 35 U.S.C. §271(b), whether literally or under the doctrine of equivalents.").)

[10] To the extent that PLG argues that the Rules of Civil Procedure trump this precedent, it is wrong. The Supreme Court has long held that "no rule of court can . . . abrogate or modify the substantive law. This is true . . . of rules of practice by this court for inferior tribunals, as it is of those rules which lower courts make for their own guidance under authority conferred." *Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 635-66 (1924). The burden of proof is a matter of substantive law. *See Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 271 (1994) ("[T]he assignment of the burden of proof is a rule of substantive law . . . . .").

Dated: July 28, 2020

Respectfully Submitted,

*/s/ John M. Bustamante*
J. Scott Denko
State Bar No. 00792457
denko@dcllegal.com
John M. Bustamante
State Bar No. 24040618
bustamante@dbiplaw.com
Julian Alejandro Rios
State Bar No. 24116971
rios@dbiplaw.com
**DENKO & BUSTAMANTE LLP**
2905 San Gabriel Street, Suite 205
Austin, Texas 78705
Telephone: (512) 580-2420
Facsimile: (737) 236-8343

**ATTORNEYS FOR PLAINTIFF**
**RETROLED COMPONENTS, LLC AND**
**THIRD PARTY DEFENDANT REECE**
**SUPPLY COMPANY OF DALLAS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true a correct copy of the above and foregoing document was filed with the clerk of Court via the CM/ECF system on July 28, 2020, which will serve and notify all counsel of record.

Dated: July 28, 2020                                Respectfully submitted,

                                                    */s/ John M. Bustamante*
                                                    John M. Bustamante